USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/10/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

CEDARS-SINAI MEDICAL CENTER,

        Petitioner,

   -v-

CYNTHIA D. RAY,

        Respondent.

19 Misc. 129 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

  This decision resolves a motion filed by petitioner Cedars-Sinai Medical Center ("Cedars-Sinai") to compel a second deposition of Cynthia D. Ray. Cedars-Sinai is the plaintiff in *Cedars-Sinai Med. Center v. Quest Diagnostics Inc.*, No. 2:17-cv-5169-GW-FFM (C.D. Cal.) (the "underlying litigation"). Between July 2013 and July 2018, Ray served as "Director, Product Management Infectious Disease and Immunology Franchise-Allergy, IBS, and Celiac Disease" at Quest Diagnostics ("Quest"). Dkt. 4-4 ("Ray CV") at 2.

  Cedars-Sinai represents that Ray admitted at her deposition, held November 29, 2018, that she had not reviewed her personal computer or personal files for materials responsive to Cedars-Sinai's discovery requests and that, after that deposition, Quest produced more than 1,700 additional documents that refer to Ray. Cedars-Sinai now moves to compel Ray to sit for a second, four-hour deposition for the limited purpose of testifying in her personal capacity as to these belatedly produced documents.

  For the following reasons, the Court grants that motion and authorizes Cedars-Sinai to take four additional hours of deposition testimony from Ray consistent with the parameters set out in this decision.

1

## I. Background

### A. Facts[1]

#### 1. The Underlying Litigation

On July 13, 2017, Cedars-Sinai brought the underlying lawsuit against Quest in the Central District of California. It alleged patent infringement, misappropriation of trade secrets, and breach of contract. Dkt. 4-2 ("Initial Compl."). Cedars Sinai seeks injunctive relief and damages. *See* SAC.

Specifically, Cedars-Sinai alleges that Quest developed its irritable bowel syndrome ("IBS") diagnostic test—IBSDetex—through the unlawful use of Cedars-Sinai's proprietary information. SAC ¶¶ 47–50. In November 2013, Cedars-Sinai and Quest began negotiating a license for Quest to market Cedars-Sinai's IBS diagnostic technology. *Id.* ¶ 34. On or around November 24, 2013, the parties entered into a contract that imposed confidentiality obligations to protect information exchanged during those discussions. *Id.* ¶ 35. Cedars-Sinai claims that these obligations required, *inter alia*, the parties to hold any proprietary information disclosed during those talks in "the strictest confidence for five years and not to use it for any purpose other than exploring the licensing opportunity." *Id.*

Pursuant to this contract, Cedars-Sinai claims that, during a call with Quest that occurred on or about January 20, 2014, it shared confidential details about its IBS diagnostic technology and provided Quest with confidential copies of its unpublished patent applications. *Id.* ¶ 37. Cedars-Sinai claims that, on several later occasions, it shared confidential information with Quest. *See id.* ¶¶ 38–43.

---

[1] The Court draws these facts primarily from Cedars-Sinai's memorandum of law in support of its motion to dismiss, Dkt. 3 ("Pet'r Mem."), and the Second Amended Complaint in the underlying litigation, Dkt. 4-1 ("SAC").

2

On or about May 23, 2014, in the midst of these discussions, Quest made a proposal for a license to Cedars-Sinai's IBS diagnostic technology. *Id.* ¶ 40. On or about December 23, 2014, however, following these discussions, Quest informed Cedars-Sinai that it no longer wanted to purchase a license. *Id.* ¶ 44. On or about February 3, 2015, Cedars-Sinai instead entered into a license with Commonwealth Laboratories, Inc. ("Commonwealth"), for Cedars-Sinai's IBS diagnostic technology. *Id.* ¶ 45.

On or about July 9, 2015, Quest filed an application in the United States Patent and Trademark Office to register the trademark IBSDETEX, No. 86688260. *Id.* ¶ 47. Cedars-Sinai claims that it later discovered that Quest, through its wholly-owned subsidiary, the Nichols Institute, had been performing IBS diagnostic services. *Id.* ¶ 48. Cedars-Sinai alleges that Quest's IBS diagnostic technology is based on the unauthorized and unlawful use of Cedars-Sinai's proprietary information. *Id.* ¶ 49.

Cedars-Sinai alleges that Ray, a Director of Product Marketing at Quest between July 2013 and July 2018, had access to and in fact received proprietary information through these talks. *Id.* ¶ 35. In this role, Cedars-Sinai alleges, Ray "led [a] launch team, to ensure pricing, coding, reporting, training, advertising/promotion, channel strategies and tactics were launch ready in . . . IBS," which included "launching two diagnostics in 2017." Ray CV at 2. Cedars-Sinai represents that Ray "had primary responsibility for developing and marketing IBSDetex." Pet'r Mem. at 8.

### 2. Ray's First Deposition

On November 29, 2018, Ray, a resident of Branchburg, New Jersey, was deposed in New York City. Pet'r Mem. at 4. At that deposition, she testified that she had searched neither her personal computer nor her personal files for documents responsive to the subpoena she received. *Id.*

3

After Ray's deposition, Quest produced an additional 1,768 documents that reference Ray. *Id.* Cedars-Sinai represents that most of these documents relate to Ray's involvement with IBSDetex, the product at the center of this lawsuit. *Id.* at 5. In addition, Cedars-Sinai represents that these documents include agreements between Quest and Commonwealth, Cedars-Sinai's eventual licensee. *Id.* Although these documents had not yet been produced as of the time of her deposition, Ray testified that she is the individual who would be most familiar with such documents. *Id.*

On January 28, 2019 and again on March 7, 2019, Cedars-Sinai requested both by letter and during meet and confers that Ray voluntarily appear for four additional hours of deposition testimony. *Id.* Ray, through her counsel which she shares with Quest, refused. *Id.*

### B. Procedural History

On March 18, 2019, Cedars-Sinai filed with this Court its motion to compel Ray to appear for a second deposition. Dkt 1. The same day, Cedars-Sinai filed a supporting memorandum of law, Dkt. 3, and a supporting declaration of Lisa D. Zang, Esq., Dkt. 4, with accompanying exhibits. On March 26, 2019, Ray filed an opposing memorandum of law ("Resp. Mem."), Dkt. 10, and a supporting declaration of Anna Do, Esq., Dkt. 11, with accompanying exhibits. On March 28, 2019, Cedars-Sinai filed its reply, Dkt. 13, and a declaration of Lisa D. Zang in further support of Cedars-Sinai's motion, Dkt. 14, with accompanying exhibits.

## II. Applicable Legal Standards

Federal Rule of Civil Procedure 45(a)(1) allows a party to serve a subpoena on a non-party for the production of documents. *See* Fed. R. Civ. P. 45(a)(1). Rule 45(c)(1)(A) provides that "[a] subpoena may command a person to attend a . . . deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed R. Civ.

4

P. 45(c)(1)(A). In addition, pursuant to Rule 37(a)(2), "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(2).

A motion to compel a second deposition must comply with the requirements set out in Rule 30(a)(2)(A)(ii). *See United States v. Prevezon Holdings, Ltd.*, 320 F.R.D. 112 (S.D.N.Y. 2017). Under Rule 30(a)(2)(A)(ii), "[a] party must obtain leave of court, which *shall* be granted to the extent consistent with the principles stated in [Rule 26(b)(1) and (2)] . . . if . . . the person to be examined already has been deposed in the case." *PKF Int'l Corp. v. IBJ Schroder Leasing Corp.*, No. 93 Civ. 1816 (SAS) (HBP), 1996 WL 591213, at *2 (S.D.N.Y. Oct. 15, 1996).

The Court has "discretion to make a determination which is fair and equitable under all the relevant circumstances." *Prevezon Holdings*, 320 F.R.D. at 114 (citations omitted). Rule 26(b)(1) provides that the scope of discoverable information sought by a party includes information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. Rule 26(b)(1). Rule 26(b)(2) sets out three factors that the Court must consider in exercising its discretion: "(1) whether the second deposition of the witness would be unnecessarily cumulative; (2) whether the party requesting the deposition has had other opportunities to obtain the same information; and (3) whether the burden of a second deposition outweighs its potential benefit." *Id.* at 115. The party opposing the second deposition bears the burden of showing that granting the motion would run afoul of Rules 26(b)(1) and (2). *Judicial Watch, Inc. v. United States DOC*, 34 F. Supp. 2d 47, 54 (D.D.C. 1998) ("Leave to conduct a second deposition should ordinarily be granted; the burden is on the opposing party to demonstrate" inconsistency with Rules 26(b)(1) and (2).).

### III. Discussion

For the following reasons, the Court holds both that the notice and process by which Cedars-Sinai sought to compel Ray's attendance at a second deposition was proper and that all

four Rule 26(b)(1) and Rule 26(b)(2) factors favor authorizing a second deposition of Ray. The Court addresses these issues in turn.

**A.     Process**

Ray argues first that Cedars-Sinai's motion should be denied because the motion to compel was procedurally deficient. Resp. Mem. at 8. Ray contends that (1) her counsel was not authorized to accept service on her behalf; (2) Cedars-Sinai filed its motion in the wrong court; and (3) Cedars-Sinai failed to seek leave of Court to hold a second deposition and to file a new subpoena on Ms. Ray. *Id.* at 8–10.

Each of these arguments is unavailing. As Ray rightly notes, "an attorney's claim that he is authorized to receive process is not by itself sufficient; there must be some evidence that the client intended to grant such authority." Resp. Mem. at 13 (citing *Jing v. Angel Tips, Inc.*, No. 11 Civ. 05073 (RRM) (JMA), 2013 WL 950585, at *3 n.1 (E.D.N.Y. Mar. 11, 2013)). But that standard is easily met here. As Cedars-Sinai points out, Ray's prior conduct clearly conveyed that her counsel had authority to accept process for her. Her counsel not only accepted service of Cedars-Sinai's original document and deposition subpoena; her counsel also represented her at her deposition and at meetings with counsel for Cedars-Sinai in connection with the instant motion, among other actions. Pet'r Reply at 1–2. In light of this prior conduct and in light of Ray's having not timely informed Cedars-Sinai that her authority to accept process on her behalf was limited to those earlier occasions or that she had later restricted her counsel's authority to accept such process, Ray has waived her right to challenge the adequacy of Cedars-Sinai's service of this motion.

Second, Rules 45(c)(1)(A) and 37(a)(2) state that a subpoena may take place "within 100 miles of where the person resides, is employed, or regularly transacts business in person" and that an order compelling the witness to attend that deposition must be filed in a court where the

6

deposition will be taken. Fed R. Civ. P. 45(c)(1)(A); *see also* Fed. R. Civ. P. 37(a)(2). Ray resides in Branchburg, New Jersey, which is located approximately 50 miles south of Manhattan, where this Court sits. Accordingly, seeking an order from this Court to compel her attendance at a deposition in New York was proper.

Third, the Court finds that Cedars-Sinai's motion to compel Ray's attendance at a second deposition is fairly read as a motion seeking leave to conduct such a deposition. In either case, the decisive analysis, which both sides have briefed, turns on the Court's application of Rule 30(a)(2)(A)(ii). *See Prevezon Holdings*, 320 F.R.D. at 114 (motion to compel second deposition "is rooted in Federal Rule of Civil Procedure 30(a)(2)(A)(ii), which provides that leave of court is required to conduct a deposition when the deponent has already been deposed in the case" (internal quotation marks and citations omitted)). And, the Court finds, Cedars-Sinai's express reservation of its right to continue the deposition of Ray, made in the course of that deposition, *see* Dkt. 14-1 at 209, sufficed to raise a live request for discovery which Cedars-Sinai is now at liberty to move to compel.

Accordingly, the Court finds that Cedars-Sinai's filing and service of this motion were proper. The Court now analyzes whether Cedars-Sinai's motion satisfies Rules 26(b)(1) and 26(b)(2).

### B. Rules 26(b)(1) and 26(b)(2)

Each of the 26(b)(1) and 26(b)(2) factors favors granting Cedars-Sinai's motion.

First, a second deposition limited to questions regarding the belatedly produced documents would not be unduly cumulative. Ray argues that any further deposition testimony would be duplicative of her earlier testimony and that of Quest's 30(b)(6) witness because Cedars-Sinai proposes asking questions already covered in those depositions. Regardless whether Cedars-Sinai seeks to ask similar or even the same questions, Quest's delayed

7

production of nearly 1,800 responsive documents deprived Cedars-Sinai of its rightful opportunity to put those questions to Ray, a percipient witness, in relation to those new documents. *See Prevezon*, 320 F.R.D. at 115 (finding that examination of an issue at a subsequent deposition would not be unduly cumulative where no inquiry was "directed to the issue" at the first deposition). Of course, "'[w]here [a] deposition is reopened because of newly discovered information, the questioning of the witness is limited to [issues] relating to the newly produced information.'" *See id.* (quoting *Ganci v. U.S. Limousine Serv., Ltd.*, No. Civ. 10–3027 (JFB) (AKT), 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011)). Cedars-Sinai requests no more. Ray has not made any showing that the issues about which Cedars-Sinai seeks to question Ray exceed the scope of questioning about or derived from the belatedly produced documents. Accordingly, the Court finds Quest's argument as to this factor unpersuasive.

Second, the information Cedars-Sinai seeks could not have been satisfactorily obtained through other means. Ray contends that written interrogatory responses or the depositions of Quest's 30(b)(6) witness are adequate substitutes to in-person testimony from her about these documents. Resp. Mem. at 16–17. The Court disagrees. As Cedars-Sinai points out, neither written interrogatory responses, which are edited by attorneys and do not permit fluid follow-up, nor the testimony of a corporate representative, are substitutes for the personal testimony of an individual directly involved in strategic determinations such as the ones at issue here. And, as the individual directly responsible for marketing IBSDetex, Ray may have unique insights into the belatedly produced documents. Accordingly, questioning Ray about these documents appears the surest way, and may be the only way, for Cedars-Sinai to obtain the information it seeks.

8

Third, the benefit of a second deposition would outweigh its burden. Cedars-Sinai seeks to question Ray regarding, *inter alia*, the terms of her termination agreement with Quest, including any requirement to cooperate with Quest in the underlying litigation; Quest's agreements with Cedars-Sinai's eventual-licensee Commonwealth, regarding the IBS diagnostic technology at issue; and belatedly produced documents created, sent, or received by Ray related to IBSDetex, the product at the center of Cedars-Sinai's claims. *Id.* at 9–13. These appear to be consequential issues in this litigation. Ray contends that Cedars-Sinai had an opportunity to question her about the Commonwealth Agreement and her termination agreement, although those documents had yet to be produced. Resp. Mem. at 17. Cedars-Sinai counters that it was not in a position to ask knowledgeable questions regarding the specifics of these documents without first having an opportunity to review them. The Court agrees that Cedars-Sinai's ability to put informed questions to witness Ray was compromised by the fact that these documents had not been produced—and Ray had not searched for them—as of the date of the first deposition. The documents about which Cedars-Sinai seeks to question Ray also appear likely to bear on relevant issues such as the timing of when Quest began developing IBSDetex and damages, and Cedars-Sinai's ability to question Ray about these subjects, too, may well be informed by the content of the late-produced documents. Pet'r Mem. at 10.

Fourth, for the reasons set forth above, the request for a four-hour deposition narrowly limited to questions about the documents produced after Ray's initial deposition—and of course following up on Ray's responses to these questions—is proportionate to the needs of the case. Cedars-Sinai seeks to question Ray about seemingly highly relevant documents that it did not have the opportunity to review before Ray's initial deposition. And Ray's argument that she would be unduly burdened because she would have to take considerable time to prepare and miss

9

work to attend the deposition is unconvincing (if not audacious in light of her earlier failure to search for responsive documents). As a third-party witness appearing in her personal capacity, Ray is at liberty not to spend outsized time preparing for her deposition. And, as Cedars-Sinai notes in its reply brief, Ray has not offered any reason why a four-hour deposition could not occur, if necessary, after work hours or on the weekend. Such timing should limit any imposition on Ray's current job.

Accordingly, all of the Rule 26(b)(1) and Rule 26(b)(2) factors weigh in favor of holding a second deposition. The Court therefore grants Cedars-Sinai's motion.

## CONCLUSION

For the foregoing reasons, in this Court's informed discretion, Cedars-Sinai's motion to compel a second deposition of Ray is granted. Barring a written agreement among the parties, any such deposition must occur in New York City, last for no more than four hours, exclusive of break time, and occur within two weeks of this order, *i.e.*, by June 24, 2019. The Court also directs Cedars-Sinai, pursuant to Rule 45(b)(1), to tender fees for Ray's "attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1).

The Court notes that the fact discovery deadline, which had been extended to May 31, 2019, is now closed and the parties are in the midst of summary judgment briefing. To the extent that this Court's resolution of the pending discovery dispute may bear on that schedule, such requests are, of course, properly directed to the Court supervising the underlying litigation.

The Court respectfully directs the Clerk of Court to terminate the motion pending at Dkt. 1 and to close this case.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: June 10, 2019
       New York, New York